# In the United States Court of Federal Claims

BID PROTEST
No. 19-203C
(Filed Under Seal: April 12, 2019 | Reissued: April 16, 2019)[*]

|  |  |
|---|---|
| TELE-CONSULTANTS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Keywords: Bid Protest; IDIQ Contract; U.S. Army; CAGE Code; Meaningful Discussions |

*James S. DelSordo,* Argus Legal, PLLC, Manassas, VA, for Plaintiff.

*Kelly A. Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General. *MAJ Wayne T. Branom III*, Trial Attorney, U.S. Army Legal Services Agency, Contract & Fiscal Law Division, Ft. Belvoir, VA, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Tele-Consultants, Inc. ("TCI") brings this post-award bid protest to challenge a decision by the United States Army Contracting Command – Aberdeen Proving Ground ("the Army" or "the agency") not to award it one of the agency's Responsive Strategic Sourcing for Services ("RS3") IDIQ contracts. TCI contends (1) that the Army misconstrued its own

---

[*] This opinion was previously issued under seal on April 12, 2019. The parties were given the opportunity to propose redactions on or before April 22, 2019. Because the parties have notified the Court that they do not have any proposed redactions (ECF No. 21), the Court reissues its decision without redactions. In this public version, the Court made a stylistic alteration on page 11, changing the numbering of the "Meaningful Discussions" title from "IV" to "B." The Court also added language at the end of the opinion directing the Clerk to enter judgment and noting that each side would bear its own costs.

evaluation criteria when it determined that TCI was not eligible for award; and (2) that the discussions the Army conducted with TCI regarding its proposal were legally inadequate.

For the reasons that follow, the Court concludes that TCI's arguments lack merit. The Army properly interpreted and applied its evaluation criteria, and the discussions it held with TCI regarding its compliance with those criteria were consistent with its legal obligations. Accordingly, TCI's motion for judgment on the administrative record is **DENIED** and the government's cross-motion is **GRANTED**.

## BACKGROUND

### I.     Overview of the Solicitation

The Army issued Solicitation No. W15P7T-15-R-0008 ("the Solicitation") on March 25, 2015. Administrative Record ("AR") Tab 11 at 53. The Solicitation anticipated the award of multiple IDIQ contracts to provide agency "customers, other Program Executive Offices[,] other Department of Defense [] agencies, and other federal agencies with knowledge based support services for requirements with Command, Control, Communications, Computers, Intelligence, Surveillance, and Reconnaissance (C4ISR) related needs." AR Tab 31 at 1386. The services to be supplied involved engineering; research, development, test, and evaluation; logistics; acquisition and strategic planning; and education and training. Id. at 1386–87.

The Solicitation stated that the basis for award would be "a combination of source selection approaches in order to obtain best value in accordance with FAR 15.101." Id. at 1498. Specifically, the Army would award contracts to "the offerors whose corporate experience proposals are rated acceptable and who represent the best value after a tradeoff analysis in accordance with FAR 15.101-1 of the past performance proposals and total evaluated costs." Id.

Under the Solicitation, offerors were required to demonstrate both their corporate experience and relevant past performance by providing three examples of contracts or task orders for which they performed the types of services required in the performance work statement. Id. at 1485–86. Offerors were instructed not to propose corporate experience examples that were performed by subcontractors or teammates and were warned that, if they did so, they would be ineligible for award. Id. at 1486.

The Solicitation provided that contracts could be awarded in two phases. During Phase 1, only offerors whose corporate experience was rated acceptable and whose past performance received a confidence rating of "Satisfactory Confidence, Substantial Confidence, or Unknown Confidence (Neutral)," would be eligible for award. Id. at 1499. If the Army was unable to award a sufficient number of contracts during Phase 1, "proposals that d[id] not meet the criteria for award in Phase 1 [could] be considered for award in Phase 2." Id. As relevant here, the Solicitation provided that during Phase 2 the agency could consider proposal revisions that were based on an "unacceptable corporate experience rating in Phase 1." Id.

No new or amended solicitation was to be issued during Phase 2. Id. Instead, proposal revisions would be accepted as the result of discussions held in accordance with FAR 15.306(d). Id.

## II.     The Language in Dispute

On April 14, 2015, the Army issued an amendment to the Solicitation which included the language whose interpretation is at issue in this case. AR Tab 21.7 at 553, 572. That language was added in response to questions posed by prospective offerors regarding the interpretation and application of Solicitation sections L.15.2 ("Corporate Experience") and L.15.3 ("Past Performance"). See AR Tab 21.8 at 593–94. The language imposes certain obligations on offerors whose "Commercial and Government Entity" ("CAGE") codes differ from the CAGE codes of the entities that performed the contracts or task orders used to establish their corporate experience and relevant past performance.[1]

Under section L.15.1 of the Solicitation, offerors were required to submit a cover letter with their proposals that included—among other information—the offeror's CAGE code. AR Tab 31 at 1485; AR Tab 21.3 at 529 (conformed Solicitation dated April 30, 2015); see also FAR 52.204-16(b) (providing that an offeror "shall enter its CAGE code in its offer with its name and address or otherwise include it prominently in its proposal"). Sections L.15.2.1(a) and L.15.3.1(a) required offerors to include CAGE codes for each of the examples of contracts or task orders that they supplied to demonstrate their corporate experience and relevant past performance. AR Tab 21.3 at 530–31; AR Tab 31 at 1485–86.

Several of the questions posed by prospective offerors concerned whether the Army would credit an offeror for examples of corporate experience and relevant past performance that had been performed under a different CAGE code from that supplied by the offeror in its proposal. For example, one offeror asked whether the Army would "accept past performance and corporate experience examples from a single legal entity offeror with multiple CAGE codes, where the orders for those examples were issued to the legal entity and tied to multiple location-based CAGE codes[.]" AR Tab 21.8 at 593. Another asked the Army to clarify whether its intent was "that all past performance must come from the same CAGE code or just that the past performance must come from the same prime offeror[.]" Id. at 594.

---

[1] A CAGE code is a five-digit ID number assigned by the Defense Logistics Agency. See 48 C.F.R. § 4.1801(1) (defining a CAGE code as an "identifier assigned to entities located in the United States or its outlying areas by the Defense Logistics Agency (DLA) Commercial and Government Entity (CAGE) Branch to identify a commercial or government entity"). "CAGE codes are assigned to discrete business entities for a variety of purposes (e.g., facility clearances, pre-award surveys, and tracking the ownership of technical data) to dispositively establish the identity of a legal entity for contractual purposes." BDO USA, LLP, B-416504, 2018 CPD ¶ 322 (Comp. Gen. Sept. 14, 2018). As the government points out, "[a] company may have a similar name and address to another unrelated company, or numerous locations, divisions, parent companies, or subsidiaries. A CAGE code identifies exactly which of these entities, at which address, is legally bound to perform the contract." Def.'s Opp'n to Pl.'s Mot. for J. upon the Admin. R. & Cross-Mot. for J. upon the Admin. R. ("Def.'s MJAR") at 2, ECF No. 15.

3

The Army responded to these questions by referring prospective offerors to "Solicitation AMD 1," which was an amendment to the Solicitation issued on April 14, 2015. Id.; see also AR Tab 21.7 at 553–87. Among other things, Amendment 1 added the language underlined below to section L.15.2.4:

> Offeror shall NOT propose corporate experience examples of subcontractors or teammates. If an offeror proposes corporate experience examples of subcontractors or teammates, the offeror shall be ineligible for award. <u>If an offeror proposes an example under a different CAGE from the offeror, the offeror shall describe the relationship within the legal entity of the offeror and include an affirmative statement that the example was performed by the same legal entity as the offeror and is not the experience of a subcontractor or teammate</u>.

AR Tab 21.7 at 572 (emphasis supplied). The amendment also made parallel changes to section L.15.3.6, governing the examples of past performance supplied. See id. at 573.

### III.   Discussions Are Held After TCI Is Found Ineligible for Award During Phase 1

TCI submitted its proposal responding to the Solicitation on May 6, 2015. AR Tab 21.26 at 774. In its cover letter, TCI listed its CAGE code as 588X2 and its DUNS number as 170883883. Id.[2] TCI submitted three examples of task orders from a single contract to establish both its corporate experience and relevant past performance. TCI did not, however, comply with the Solicitation's requirement that it include a CAGE code for each of the examples of corporate experience and relevant past performance upon which it relied.

On May 16, 2017, the contracting officer sent TCI a letter informing it of its ineligibility for award under Phase 1. See generally AR Tab 21.15. In the letter, the contracting officer advised TCI that the Army would be proceeding to Phase 2, and that it would be holding discussions in connection with Phase 2. Id. at 616. The contracting officer included several evaluation notices in the letter. Most relevant to the present protest, the contracting officer advised TCI that its proposal was not compliant with the Solicitation's requirements because 1) it "did not provide the CAGE, DUNS, and NAICS for Examples 1, 2, and 3" of its corporate experience examples; and 2) it did not supply CAGE codes, government contracting activity, contracting officer name, telephone number, or email address for any of its past performance examples. Id. at 618–19.[3]

---

[2] A Data Universal Numbering System ("DUNS") number is a nine-digit number provided by the company Dun and Bradstreet assigned "for each physical location of a business." Fed. Serv. Desk, What is a DUNS and how do I obtain one?, https://www.fsd.gov/fsd-gov/answer.do?sysparm_kbid=4dd0e67e6f585100211956532e3ee43a&sysparm_search=DUNS (last updated Apr. 27, 2018). The pairing of a CAGE code and DUNS number is unique.

[3] The evaluation notices identified a number of other similar errors of omission in TCI's proposal, including that 1) it "did not submit a signed copy of the SF 30 form for Solicitation Amendment 6 prior to the due date and time specified in the Amendment"; 2) it failed to provide end dates for the periods of performance for Examples 1 and 2 regarding its corporate experience

4

The contracting officer instructed TCI that if it wished to be considered for award in Phase 2, it should "carefully review" the discussion questions and "submit a revised proposal addressing the items identified by the Government." Id. at 616. Revised proposals were to be evaluated "in accordance with the terms and conditions of the solicitation, including all amendments." Id. at 617.

The contracting officer warned that "[p]roposals with an omission or unclear or uncertain proposals may not be considered for award." Id. She also advised that "[t]he Government intend[ed] to make award without discussions after receipt of revised proposals" but that it "reserve[d] the right to conduct clarifications in accordance with FAR 15.306(a) or further discussions in accordance with FAR 15.306(d)." Id.

### IV. TCI's Revised Proposal Is Found Unacceptable

TCI timely submitted a revised proposal on June 14, 2017. See AR Tab 21.30 at 870. It is undisputed that the proposal contained all of the information that had been identified as missing in the evaluation notices. In particular, in its revised proposal, TCI supplied the CAGE codes for the examples of corporate experience and relevant past performance upon which it relied. See AR Tab 21.31 at 900, 903, 906; AR Tab 21.32 at 909, 912, 915.

Nonetheless, on October 18, 2018, TCI was notified that it would not receive an award under Phase 2 of the Solicitation on the grounds that its proposal was "Non-Compliant with the requirements of the solicitation and received an Unacceptable rating in the Corporate Experience factor." AR Tab 21.43 at 1304–05. TCI requested a debriefing on October 19, 2018, which was held on October 24, 2018. AR Tab 21.41 at 1277; AR Tab 21.42 at 1302.

During the debriefing, the contracting officer explained why the Army had found TCI's corporate experience proposal unacceptable. She noted that "[i]n the Cover Letter, the offeror provided the CAGE Code '588X2' [whereas] [f]or Example 2, the Offeror provided the CAGE code '39313' and for Example 3, provided '5RX70.'" AR Tab 21.41 at 1291. Notwithstanding these differences, the contracting officer observed, TCI "did not describe the relationship within the legal entity of the offeror for both examples, and did not include an affirmative statement that both examples were performed by the same legal entity as the offeror and [was] not the experience of a subcontractor or teammate as required." Id. Likewise, for the past performance examples, TCI provided CAGE code 39313 for Example 2 and CAGE code 5RX70 for Example 3, which did not match the CAGE code in its cover letter or "the CAGE code on the contract in PPIRS." Id. at 1295. Again, TCI did not "explain the relationship between the two CAGE codes as required." Id.

---

proposal; 3) it did not address the required items listed in L.15.3.2.a–h of the Solicitation (which included a narrative of any corrective actions taken, any contracts terminated for default, etc.); and 4) it submitted data for a labor category in its cost proposal that did not include a required job description. AR Tab 21.15 at 618–19.

5

## V. GAO Protest

TCI filed a protest with the Government Accountability Office ("GAO") on October 29, 2018. AR Tab 1 at 1. It contended that it was "fully compliant with the stated terms of the RFP and should have been offered an award under the RS3 program." Id. at 1–2. TCI's principal argument was that the Army misinterpreted the requirements set forth in Amendment 1. Id. at 11. TCI explained to GAO that it had operated under three different codes because of changes in the address of its corporate offices. Id. at 13–14. It argued that there was "no requirement for providing an explanation if the CAGE code is that of the offeror, only 'If an offeror proposes an example under a different CAGE from the offeror.'" Id. at 11 (citing sections L.15.2.4 and L.15.3.6 of the conformed Solicitation). It also argued that the discussions that occurred were not meaningful because the Army's evaluation notices did not inform TCI that it was required to explain the different CAGE codes in its proposal. Id. at 16–17.

GAO denied TCI's protest on January 29, 2019. AR Tab 25 at 1356. It found "nothing unreasonable with the agency's decision to reject TCI's proposal based on the protestor's failure to comply with the RFP's instructions for the submission of its corporate experience information." Id. at 1359. Although TCI explained "why three different CAGE codes were included in its revised proposal," GAO observed, "the RFP's instructions required this explanation to be included in TCI's offer and not in a subsequent protest." Id. at 1360. Furthermore, GAO agreed with the government that "an agency is not required to reopen discussions to afford an offeror an additional opportunity to revise its proposal where a weakness or deficiency is first introduced in the firm's revised proposal." Id. at 1362. Ultimately, GAO found "no basis to question the agency's decision not to reopen discussions to address deficiencies that were introduced by TCI in its revised proposal." Id.

## VI. The Present Action

TCI filed the present bid protest along with a motion for a preliminary and permanent injunction on February 5, 2019. ECF Nos. 1, 4. In its complaint, TCI presses essentially the same challenges as it posed before GAO. It contends that the Army's interpretation of the Solicitation's requirements is incorrect and that the discussions the agency held with TCI were not meaningful.

The Court held a telephonic status conference on February 7, 2019, after which it issued an expedited briefing schedule and advised the parties that it would merge consideration of TCI's motion for a preliminary and permanent injunction with its consideration of the motions for judgment on the administrative record. ECF No. 9. The Court also issued a protective order that same day. ECF No. 10.

The government filed the administrative record on February 15, 2019. ECF No. 15. TCI filed its MJAR on February 27, 2019. See generally Pl.'s Mem. in Supp. of Mot. for J. on the Admin. R. ("Pl.'s Mem."), ECF No. 13-1. The government filed its opposition to TCI's MJAR and a cross-motion for judgment on the administrative record on March 8, 2019. See generally Def.'s MJAR. The cross-motions have been fully briefed. ECF Nos. 17–18. Oral argument was held on April 9, 2019.

## DISCUSSION

### I. Bid Protest Jurisdiction

The Court of Federal Claims has jurisdiction over bid protests in accordance with the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 § 12 (codified at 28 U.S.C. § 1491(b)). Specifically, the Court has the authority "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012) (observing that § 1491(b)(1) "grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement").

A party invoking this Court's bid protest jurisdiction "bears the burden of establishing [the] elements [of standing]." Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)) (alterations in original). To possess standing to bring a bid protest, a plaintiff must be an "interested party"—i.e., an actual or prospective bidder (or offeror) who possesses a direct economic interest in the procurement. Sys. Application & Techs., Inc., 691 F.3d at 1382 (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). An actual or prospective offeror has a direct economic interest if it suffered a competitive injury or prejudice as a result of an alleged error in the procurement process. Myers, 275 F.3d at 1370 (holding that "prejudice (or injury) is a necessary element of standing"); see also Weeks Marine, Inc., 575 F.3d at 1359.

In post-award protests, like this one, a plaintiff may demonstrate competitive injury or prejudice by showing that it would have had a "substantial chance" of winning the award "but for the alleged error in the procurement process." Weeks Marine, Inc., 575 F.3d at 1359 (quoting Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003)). In making the standing determination, the Court assumes well-pled allegations of error in the complaint to be true. Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 323 (2015) (quoting Digitalis Educ. Sols., Inc. v. United States, 97 Fed. Cl. 89, 94 (2011), aff'd, 664 F.3d 1380 (Fed. Cir. 2012)); see also Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot., 550 F.3d 1121, 1131 & n.9 (Fed. Cir. 2008) (citing Lujan, 504 U.S. at 561); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 695–96 (2010) (noting that the showing of prejudice as an element of standing "turns entirely on the impact that the alleged procurement errors had on a plaintiff's prospects for award, taking the allegations as true," and distinguishing "allegational prejudice" required to establish standing from the "prejudicial error" required to prevail on the merits).

TCI is an actual offeror challenging the Army's interpretation of the Solicitation and the determination that TCI was ineligible for award under the Solicitation's requirements. This falls within the Court's "jurisdiction over objections to the procurement process." Sys. Application & Techs., Inc., 691 F.3d at 1381. Taking the allegations of error to be true—as it must to determine

7

standing—the Court finds that, but for the Army's determination of ineligibility, there is a substantial chance that TCI would have been awarded an IDIQ contract. Accordingly, TCI is an interested party and the Court has subject-matter jurisdiction over its claim.

## II.     Standard of Review

Parties may move for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). Pursuant to RCFC 52.1, the Court reviews an agency's procurement decision based on the administrative record. Bannum, Inc. v. United States, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). The Court makes "factual findings under RCFC [52.1] from the record evidence as if it were conducting a trial on the record." Id. at 1357. Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

The Court reviews challenges to procurement decisions under the same standards used to evaluate agency actions under the Administrative Procedure Act, 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4) (stating that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5"). Thus, to successfully challenge an agency's procurement decision, a plaintiff must show that the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Bannum, Inc., 404 F.3d at 1351.

This "highly deferential" standard of review "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)). As a result, where an agency's action has a reasonable basis, the Court cannot substitute its judgment for that of the agency. See Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (holding that as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion") (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). The Court's function is therefore limited to "determin[ing] whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (quoting Latecoere Int'l, Inc. v. U.S. Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)); see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (noting that a court should review agency action to determine if the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action").

In short, a disappointed offeror "bears a heavy burden" in attempting to show that a procuring agency's decision lacked a rational basis. Impresa, 238 F.3d at 1338. For the agency to prevail, it need only articulate "a rational connection between the facts found and the choice

made," and courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (quotations and citations omitted).

## III.   Merits

### A. Interpretation of the Solicitation

As explained above, the Army found TCI ineligible for an award during Phase 2 because it failed to achieve an acceptable rating on the corporate experience factor. The agency rated TCI's corporate experience proposal unacceptable because TCI failed to include an affirmative statement that it was the same legal entity as the party that performed the task orders that it submitted as examples to establish its corporate experience. The Army's determination was based on the language of section L.15.2.4 of the Solicitation stating that "[i]f an offeror proposes an example under a different CAGE from the offeror, the offeror shall describe the relationship within the legal entity of the offeror and include an affirmative statement that the example was performed by the same legal entity as the offeror and is not the experience of a subcontractor or teammate." AR Tab 21.7 at 572.

TCI contends that the Army misinterpreted this language. According to TCI, its examples were not proposed under a "different CAGE from the offeror," because TCI is the offeror and "all CAGE codes [cited in the examples] were from TCI." Pl.'s Mem. at 19. It observes that TCI holds multiple CAGE codes because it has moved its corporate offices several times. Id. at 21.[4] It is for that reason, TCI explains, that the CAGE code it used to identify itself in its proposal is not the same as the CAGE codes associated with the examples. Id.

When interpreting a solicitation, the Court applies the same principles that apply to the interpretation of contracts. Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1353 n.4 (Fed. Cir. 2004). Thus, the Court "begin[s] with the plain language of the document." Id. at 1353 (citing Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc)). The Court "must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions." Id. "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning" and the Court "may not resort to extrinsic evidence to interpret them." Id.

The burden falls on TCI to demonstrate its compliance with the terms of the Solicitation. Manus Med., LLC v. United States, 115 Fed. Cl. 187, 193 (2014) ("[O]fferors have an affirmative duty to submit a proposal that conforms to the explicit requirements outlined in the solicitation."). In this case, it is undisputed that the CAGE code TCI supplied with its proposal was different from the CAGE codes it supplied for two of the task orders it used to establish its

---

[4] CAGE 588X2 (the code used in the cover letter and in Example 1) is associated with TCI's office in Norfolk, Virginia. Pl.'s Mem. at 21. CAGE 39313 (the code used in Example 2) is affiliated with TCI's prior corporate office location in Alpharetta, Georgia. Id. And CAGE 5RX70 (the code used in Example 3) is affiliated with its prior corporate office location in Fairfax, Virginia. Id.

9

corporate experience. Under the plain language of section L.15.2.4, TCI was obligated to affirm that the examples were performed by the same entity that was seeking the contract award because the two examples were proposed "under a different CAGE from the offeror."

TCI's alternative interpretation of the language of section L.15.2.4, on the other hand, is a convoluted one. It points out that all of the CAGE codes in fact belonged to the same legal entity and argues that "[t]here is no requirement for providing an explanation if the CAGE code is that of the offeror, only '[i]f an offeror proposes an example under a different CAGE from the offeror.'" Pl.'s Mem. at 19 (quoting conformed Solicitation section L.15.2.4 at AR Tab 21.16 at 736).

But, TCI's proposed distillation of the Solicitation's requirements does not advance its case. Even if the Court were to apply TCI's reformulated language, it would still conclude that the CAGE code that an offeror supplies with its proposal is the CAGE code "of the offeror." The CAGE code "of the offeror" here was 588X2. See AR Tab 21.26 at 774 (original proposal cover letter); AR Tab 21.30 at 870 (amended proposal cover letter). The CAGE codes supplied with two of the examples of corporate experience, on the other hand, were 33913 and 5RX70. AR Tab 21.31 at 903, 906. Each example was thus proposed under a "different CAGE code from" the CAGE code of the offeror. And given the importance of assuring that an award is not made to an offeror on the basis of experience it does not possess, it was not unreasonable for the Solicitation to require TCI to come forward and explicitly affirm that—notwithstanding that their CAGE codes were different—it was the same legal entity that had performed the task orders cited in its proposal.

TCI's interpretation of the relevant language has the incongruous effect of imposing this affirmation requirement only where an offeror supplies examples that were performed by other legal entities. But offerors were not permitted to rely upon the corporate experience or past performance of other legal entities; doing so would render them ineligible for award. And an offeror that supplied examples that were performed by other legal entities could not—by definition—provide an "affirmative statement that the example was performed by the same legal entity as the offeror."

TCI notes that it is not unusual for a single legal entity to have multiple CAGE codes. Pl.'s Reply in Supp. of Mot. for J. on the Admin. R. at 14, ECF No. 17. That is true, but it does not help TCI because the fact that a single legal entity may have multiple CAGE codes is actually what led the agency to add the language of section L.15.2.4 that is at issue in this protest. Thus, the Army added the operative language to the Solicitation in response to questions such as, for example, whether the Army would "accept past performance and corporate experience examples from a single legal entity offeror with multiple CAGE codes, where the orders for those examples were issued to the legal entity and tied to multiple location-based CAGE codes[.]" AR Tab 21.8 at 593. The answer the Army provided in section L.15.2.4 as amended was "yes" so long as the offeror affirmed that—despite the multiple CAGE codes—the legal entity that performed the examples was the same one seeking the contract award.

The Court is also not persuaded by TCI's argument that the Army was aware (or should have been aware) that the examples provided in TCI's proposal represented performance by the same legal entity that was seeking the contract award. The CAGE code submitted for Example 3

10

(5RX70) was different from both the CAGE code TCI provided in its cover letter (588X2) and the CAGE code for the contract contained in PPIRS (also 588X2). In addition, CAGE 5RX70 was not listed at all in the System for Award Management. AR Tab 21.38 at 1061. Further, TCI's initial proposal used DUNS number 170883883 in its cover letter and for all three past performance examples, but TCI's revised past performance proposal included a different DUNS number for both its second and third examples. Compare AR Tab 21.28 at 812, 815, with AR Tab 21.32 at 912, 915.

Moreover, and in any event, it is irrelevant whether the agency could have ultimately ascertained on its own that the examples TCI submitted were performed by the same entity that was seeking the contract award. The Solicitation placed the onus on offerors to provide an explanation and make an affirmative statement to that effect. Further, the Solicitation warned that "[t]he Government does not assume the duty to search for data to cure problems found in proposals." AR Tab 21.3 at 544.[5]

In short, the Army's decision to rate TCI's proposal unacceptable as to its corporate experience was consistent with the plain language of sections L.15.2.4 of the Solicitation. TCI's interpretation of the language, on the other hand, is unreasonable.

### B. **Meaningful Discussions**

As noted, TCI challenges the legal sufficiency of the discussions the Army held in connection with Phase 2 of the procurement. TCI observes that "[w]hen an agency finds that a weakness or risk associated with a given aspect of an offeror's proposal may jeopardize successful performance of a contract, it represents a significant weakness that must be addressed during discussions." Pl.'s Mem. at 25 (citing Caddell Constr. Co. v. United States, 125 Fed. Cl. 30, 46 (2016); Dynacs Eng'g Co., Inc. v. United States, 48 Fed. Cl. 124, 133–34 (2000)). The Army violated this obligation, TCI argues, because it did not advise TCI of the necessity to explain its relationship to the entities that performed the examples in light of the difference between their CAGE codes and the CAGE code TCI used to identify itself in connection with the procurement.

---

[5] In its briefs, TCI focuses on the fact that section M.3.6 of the Solicitation—which originally stated in pertinent part that "[t]he Government will accept no more than one (1) proposal from each offeror (one proposal per CAGE code)"—was modified by Amendment 1, striking the parenthetical "(one proposal per CAGE code)." Pl.'s Mem. at 15–16. As TCI correctly observes, the change to section M.3.6 "was clearly in response to several questions from offerors suggesting under the original provision that they could submit multiple offers under separate CAGE codes representing the same entity." Id. at 16. The result of the amendment was that a single offeror could submit only one proposal, even if it had multiple CAGE codes. But TCI has not explained to the Court's satisfaction what relevance this change has to the interpretation of the provision at issue in this case—section L.15.2.4—which concerns how a single offeror that holds multiple CAGE codes may establish its corporate experience.

This contention lacks merit. The Army could not have asked TCI to clarify the relationship between the CAGE codes in TCI's cover letter and those in the examples because the examples in TCI's Phase 1 proposal did not contain any CAGE codes. See AR Tab 21.27 at 800, 803, 806 (corporate experience proposal dated May 6, 2015); AR Tab 21.28 at 809, 812, 815 (past performance proposal dated May 6, 2015); AR Tab 21.15 at 618 (Evaluation Notices). It therefore failed to comply with sections L.15.2.1(a) and L.15.3.1(a) of the Solicitation. It was not until TCI added the CAGE codes that this particular deficiency, which was based on a failure to comply with section L.15.2.4, surfaced. And the Army had no reason to anticipate that TCI, once having brought itself into compliance with sections L.15.2.1(a) and L15.3.1(a), would then submit a proposal that was not compliant with L.15.2.4 by neglecting to explain the relationship and affirm that all of the CAGE codes were in fact assigned to the same legal entity.

Further, the Army was under no obligation to hold follow-on discussions after TCI submitted its revised Phase 2 proposal. It is well established that "the decision whether to reopen discussions is largely a matter left to the agency's discretion." Lyon Shipyard, Inc. v. United States, 113 Fed. Cl. 347, 357 (2013). "[A]n agency is not required to reopen discussions to afford an offeror an additional opportunity to revise its proposal where a weakness or deficiency is first introduced in the firm's revised proposal." Ellwood Nat'l Forge Co., B-416582, 2018 CPD ¶ 362 (Comp. Gen. Oct. 22, 2018); see also Iron Bow Techs., LLC v. United States, 133 Fed. Cl. 764, 780 (2017). Indeed, the contracting officer cautioned that "[r]evised proposals will be evaluated in accordance with the terms and conditions of the solicitation, including all amendments" and that the Army intended "to make award without discussions after receipt of revised proposals, and d[id] not intend to obtain further revisions." AR Tab 21.15 at 617. Thus, there is no merit to TCI's contention that the Army was required to reopen discussions after TCI's revised proposal introduced a new issue of noncompliance with the Solicitation's requirements.

## CONCLUSION

For the foregoing reasons, TCI's motion for judgment on the administrative record is **DENIED** and the government's cross-motion for judgment on the administrative record is **GRANTED**. Accordingly, TCI's motion for a preliminary and permanent injunction is also **DENIED**.

The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan  
ELAINE D. KAPLAN  
Judge